VESTAL v. THERMINSUL CORP.

WORKMEN'S COMPENSATION—NOTICE OF ACCIDENTAL INJURY—CARBON MONOXIDE GAS.

In proceeding to recover for death of plaintiffs' decedent from carbon monoxide gas, evidence showing that such gas escaped from cupola in which limestone had been melted by burning coke, that two employees in the same room were overcome to such an extent that immediate medical attention was necessary, and that plaintiff, who was in same room and assisted in resuscitation efforts, went to his near-by home for whisky, was shortly thereafter found ill and was practically unconscious in about an hour, that his illness was immediately communicated to defendant's superintendent *held*, sufficient "notice or knowledge" of the injury to satisfy statutory requirements (2 Comp. Laws 1929, § 8434).

WIEST, J., dissenting.

Appeal from Department of Labor and Industry. Submitted June 7, 1939. (Docket No. 34, Calendar No. 40,496.) Decided November 9, 1939.

Melvina Vestal, widow, and minor children presented their claim against Therminsul Corporation, employer, and Michigan Mutual Liability Company, insurer, for compensation for death of Fred Vestal caused by injuries sustained while in defendant's employ. Award denied. Plaintiff appeals. Reversed.

*Frank F. Ford & Edward J. Ryan,* for plaintiffs.

*L. J. Carey* and *George J. Cooper,* for defendants.

BUSHNELL, J. Plaintiffs appeal from the denial of their claim by the department of labor and industry.

The only question raised in this appeal is whether the department erroneously found that the employer did not have "notice or knowledge of the injury." 2 Comp. Laws 1929, § 8434 (Stat. Ann. § 17.168).

Defendant Therminsul Corporation is a manufacturer of rock wool, the process requiring the melting of limestone by burning coke in a cupola 8 or 10 feet high. The molten rock is then treated with steam, which blows it into mineral wool. Considerable care is required in the firing of the cupola because the incomplete combustion of coke dust will generate deadly carbon monoxide gas, which travels 100 feet in less than four minutes.

On February 25, 1937, plaintiffs' decedent, Fred Vestal, with others, was working in defendant Therminsul Corporation's cupola room about 6 or 7 o'clock in the evening, when a light colored gas was observed coming out of the cupola door about 10 feet above the floor. Two of defendant's employes, Sleeman and Webster, who had been putting coke and slag into the cupola, were overcome by the gas to such an extent that immediate medical attention was necessary. Plaintiff's decedent assisted in attempts to resuscitate the gassed employees and some one asked him to go to his home, which was near-by, to get some whisky. His wife testified that he came in the back door, asked if there was any whisky in the house, and said: "Hand me the bottle quick; there are two men gassed at the plant." She stated he was hurrying and appeared to be pale. A short time after Vestal left his home, as his wife started for the grocery store, she found her husband in a stooped position by the sidewalk. He was rushed into the house, where he appeared to be faint and tried to vomit, and Dr. Barnabee was called. The doctor testified that he was called to attend Vestal between 7 and 8 o'clock on the evening in question;

that he was practically unconscious, and four or five men were around trying to help him breathe.

Defendant's superintendent, Leonard Kuehn, testified that, while the company's physician, Dr. Koestner, was still working on the two men who had been overcome at the plant, he received a report that Vestal "had also been taken sick and was at home;" that he immediately went to the Vestal home and was told by Vestal that he was "sick to his stomach." When Dr. Barnabee arrived, Kuehn returned to the plant as there was nothing more he could do for Vestal. Defendant's night superintendent, Van Dyke, also testified as to the gassing of Sleeman and Webster, and that the morning after he was told by Vestal that he had been taken ill the same night the other two were gassed and that he "had to have help to get home," because "he was taken ill on his way to the house."

Vestal's attending physician called on him again the next day. He found Vestal's heart was still weak and that he was pale and coughing a great deal. He remained under Dr. Barnabee's care, but continued to grow worse, complaining of "that terrible cough all the way through." Later Dr. Banner also attended Vestal and fluid was taken from his lungs. He died on November 7, 1937. From February until October 2d he worked at defendant's plant whenever there was work to do.

The department found that "relative to notice, the facts are similar to those presented in the recent case of *Clifton* v. *Chrysler Corporation*," 287 Mich. 87, and, on that basis, held that the testimony "relative to notice or knowledge was not sufficient to sustain plaintiff's action." The *Clifton Case* is based upon *Gumtow* v. *Kalamazoo Motor Express*, 266 Mich. 16. In neither of these cases did the defendant corporation have knowledge of an accident, and the court

held that mere knowledge of an illness did not convey "notice or knowledge" of an accident. In the case now under consideration, the evidence is most compelling that the defendant corporation had "notice or knowledge" of the accident. Knowledge of Vestal's illness, following so closely and so immediately connected with knowledge of the escaping carbon monoxide gas and its effect on others in the same room, was sufficient "notice or knowledge of the injury" to satisfy the requirements of the statute. 2 Comp. Laws 1929, § 8434 (Stat. Ann. § 17.168).

The order of the department of labor and industry is vacated and the cause remanded. Costs to appellant.

Butzel, C. J., and Sharpe, Potter, Chandler, and North, JJ., concurred with Bushnell, J.

Wiest, J. (*dissenting*). The finding by the department was in accord with the evidence and law and should be affirmed.

Plaintiffs' decedent returned to work February 26, 1937, the next day after the claimed accident, and continued to work until October 1, 1937.

I quote from the finding:

"In that the transcript of the testimony taken at the original hearing contained no evidence concerning whether the defendants had notice of the happening of an accident within the statutory period upon proper application, the taking of additional testimony was permitted for this purpose. Examination of such additional testimony fails to disclose that the defendants or either of them within the time permitted by statute had knowledge or proper notice that plaintiffs' decedent suffered an accident. To prove such knowledge or notice, the general superintendent and night superintendent, at the time of the accident, were called by plaintiffs for cross

examination under the statute. Their testimony constitutes all the testimony produced relative to knowledge at the time plaintiffs' decedent was sick to his stomach but not that he was ill due to the inhalation of gas emitted from the cupolas in the defendant Therminsul Corporation's factory. The general foreman in this respect testified as follows:

" '*Q.* When you went into Vestal's house, you saw Mr. Vestal in his home?

" '*A.* Sure.

" '*Q.* He said he was taken sick, did he?

" '*A.* He said he was sick to his stomach, yes.

" '*Q.* When Mr. Vestal's family physician, Dr. Barnabee, arrived, you went back to the plant?

" '*A.* That is right.

" '*Q.* You were at his home until he arrived and you felt there was nothing more to do for Mr. Vestal and you went back to the plant?

" '*A.* There was nothing wrong with him when I went home. He was just sick to his stomach was all.'

"The night foreman testified similarly, as follows:

" '*Q.* And after the men Sleeman and Webster were taken into the locker room and after Dr. Koestner arrived, Vestal was asked to go home and get some whisky and bring it back to help revive Sleeman and Webster?

" '*A.* Yes.

" '*Q.* You recall that the next morning Vestal came to you and reported to you that he had been taken ill the previous night, that is to say, the same night Sleeman and Webster were gassed?

" '*A.* He reported unofficially.

" '*Q.* He told you about it, did he not?

" '*A.* Yes. * * *

" '*Q.* He also told you the reason that caused him to have help to get into the house?

" '*A.* Yes, sir.

" '*Q.* That reason was that he was taken ill on his way to the house?

" '*A.* That's right.'

"This testimony fails to disclose that within three months next following plaintiffs' decedent's injury, defendants had notice or knowledge that such injury resulted from his having been gassed by gas emitted from the cupolas in the Therminsul Corporation's factory. The only knowledge or notice the

defendants had from the testimony adduced is that plaintiff was ill and sick to his stomach but there is no testimony that they knew or had notice of what caused such illness. Relative to notice, the facts are similar to those presented in the recent case of *Clifton* v. *Chrysler Corporation,* 287 Mich. 87, in which case the Supreme Court of this State held that the testimony therein presented relative to notice or knowledge was not sufficient to sustain plaintiff's action.''

The finding of the department was in accord with the opinion in *Littleton* v. *Railway Co., Inc.,* 276 Mich. 41, and should be affirmed. It should be so ordered, with costs to defendant.

MCALLISTER, J., did not sit.